# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| RICHARD PAUL WAGNER,<br><br>   Plaintiff,<br><br>   v.<br><br>NANCY A. BERRYHILL, Acting Commissioner Of Social Security,<br><br>   Defendant. | Case No. CV 17-5698-AS<br><br>**MEMORANDUM OPINION** |

## PROCEEDINGS

On August 1, 2017, Plaintiff filed a Complaint seeking review of the denial of his application for Disability Insurance Benefits ("DIB"). (Dkt. No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11, 12). On December 28, 2017, Defendant filed an Answer along with the Administrative Record ("AR"). (Dkt. Nos. 15, 16). On July 18, 2018, the parties filed a Joint Stipulation ("Joint Stip."), setting forth their respective positions regarding Plaintiff's claims. (Dkt. No. 23).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On November 4, 2014, Plaintiff, formerly employed as a framer, a cook, and a painter, (see AR 186), filed his DIB application alleging an inability to work because of a disability since October 9, 2013. (AR 172-73). Plaintiff's application was denied initially on February 17, 2015, (AR 113-16), and upon reconsideration on May 28, 2015. (AR 119-23). On December 22, 2015, an Administrative Law Judge, Lesley Troope ("ALJ"), heard testimony from Plaintiff and a vocational expert, Carmen Roman ("VE"). (AR 41-82). Plaintiff, who appeared without a representative, was advised of his right to representation, and expressly waived that right both verbally and in writing. (AR 44-46, 151-53). Plaintiff also submitted a substantial amount of additional documents, which were added to the record. (AR 46-48). At the end of the hearing, the ALJ noted that she was going to further develop the evidence in Plaintiff's case and "possibly send [Plaintiff's] entire medical record to a psychologist for an opinion." (AR 79).

The ALJ issued a decision in Plaintiff's case on March 3, 2016. (AR 17-33). At the beginning of the decision, the ALJ summarized the developments since the hearing:

> [O]n January 13, 2016, I sent medical interrogatories to Dr. Ashok I. Khushalani, an impartial medical expert. . . . Dr. Khushalani's response to the medical interrogatories was received and was added into the record. On January 28, 2016, I proffered the additional evidence to [Plaintiff] and allowed ten days for comments. On January 29, 2016, [Plaintiff] came to the hearing office at which time he was given a compact disc (CD) that contained his entire electronic file including the additional records he submitted at the hearing. [Plaintiff's] proffer response was received on February 8, 2016. Given that [Plaintiff] did not request a supplemental hearing, I consider the record fully developed and closed the record.

(AR 17). The ALJ then proceeded to apply the five-step sequential process to evaluate Plaintiff's case and deny his disability claim. (AR 19-33).

At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since October 9, 2013, the alleged onset date. (AR 19). At step two, the ALJ found that Plaintiff has the following severe impairments: chondromalacia of the right knee; degenerative disc disease of the cervical and lumbar spine; obesity; history of umbilical hernia, status-post hernia surgery; major depressive disorder with psychotic features; schizophrenia; and post-traumatic stress

disorder (PTSD).[1] (Id.). At step three, the ALJ found that Plaintiff's impairments do not meet or equal a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 20). Before proceeding to step four, the ALJ found that Plaintiff has the Residual Functional Capacity ("RFC")[2] to perform light work[3] with the following limitations:

> [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for six hours in an eight-hour workday with regular breaks; he can sit for six hours in an eight-hour workday with regular breaks; he can perform all postural activities occasionally; he can understand, remember and carryout simple, routine and repetitive work instructions; he should work with things rather than with people; he can make simple work-related judgements typical of unskilled work; he can perform work involving occasional and predictable work changes gradually introduced; he can maintain attention, concentration and/or pace, generally, for two hours

---

[1] The ALJ found Plaintiff's history of shingles and remote history of seizure disorder and headaches to be non-severe. (AR 20).

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and non-exertional limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

4

> increments in the performance of simple, routine and repetitive work instructions; he should have no interaction with general public due to distractibility; he is limited to occasional, brief, superficial and task oriented interactions with no more than 1-3 coworkers at any one time; and he is limited to occasional, brief, superficial and task oriented interactions with supervisors.

(AR 23). At step four, the ALJ noted that Plaintiff is unable to perform any past relevant work. (AR 30). Relying on the VE's testimony at step five, the ALJ found that Plaintiff, with his age (forty-four on the alleged disability onset date), "limited education," work experience, and RFC, can perform the following representative jobs existing in significant numbers in the national economy: laundry worker (Dictionary of Occupational Titles ("DOT") 302.685-010), ticket marker (DOT 209.587-034), and garment sorter (DOT 222.687-014). (AR 30-32). Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 9, 2013, through the date of the decision. (AR 32).

Plaintiff requested that the Appeals Council review the ALJ's decision on March 18, 2016. (AR 13). He appointed his uncle, Bert Wagner, as his non-attorney representative, who submitted a brief on Plaintiff's behalf. (AR 160-64). On May 30, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1). Plaintiff now seeks judicial review of the

ALJ's decision, which stands as the final decision of the Commissioner. See 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

This Court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**PLAINTIFF'S CONTENTIONS**

Plaintiff asserts two claims on appeal to this Court. (See Joint Stip. at 5-26). First, he contends that the ALJ erred in relying on the VE's testimony that he can perform jobs existing in substantial numbers in the national economy because those jobs conflict with the RFC finding limiting him to "occasional, brief superficial and task-oriented interactions with supervisors."

(Id. at 5-8, 11-13). Second, he argues that the ALJ failed to properly develop the record with respect to the education and social/adaptive abilities required to perform these jobs. (Id. at 13-19, 24-26).

**DISCUSSION**

After considering the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material legal error.[4]

**A.  The ALJ Did Not Err in Relying on the VE's Testimony**

Plaintiff contends that the ALJ erred in relying on the VE's testimony at step five to find that Plaintiff can work as a laundry worker, a ticket marker, or a garment sorter. (Joint Stip. at 5-8). Plaintiff asserts that this finding conflicts with the ALJ's RFC finding limiting him "to occasional, brief, superficial and task oriented interactions with supervisors." (Id.). Plaintiff contends that this limitation actually precludes any basic work activity. He points to the agency's regulations, which provide that basic work activities include the ability to respond appropriately to supervision, coworkers, and

---

[4] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886–88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (an ALJ's decision will not be reversed for errors that are harmless).

7

usual work situations, and impairments that limit this ability "may reduce [a claimant's] ability to do past work and other work." (Id. at 6 (citing and quoting 20 C.F.R. §§ 416.922(b)(5), 416.945(e))). Plaintiff also points to provisions of the agency's Program Operations Manual System ("POMS") stating that the ability to "accept instructions and respond appropriately to criticism from supervisors" is critical for performing unskilled work. (Id. at 6-7 (quoting POMS DI 25020.010 ¶ B.3.k)).

Plaintiff argues that the ALJ failed to discuss or explicitly find whether Plaintiff is able to respond appropriately to supervisors other than in brief exchanges of information or handing off products. (Id. at 7). Plaintiff contends, moreover, that even under a "general understanding" of occupations, it is apparent that the ability to engage in more than superficial contact with supervisors is essential to performing substantial gainful activity. (Id. at 7-8). Plaintiff suggests, finally, that remand is warranted here particularly because his lack of representation, limited education, and emotional state at the hearing rendered him unable to address the conflict. (Id. at 13).

The ALJ bears the burden at step five to establish that work exists in significant numbers in the national economy that Plaintiff can perform. Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012). "In making disability determinations, [the Agency relies] primarily on the DOT (including its companion publication, the SCO) for information about the requirements of

work in the national economy." SSR 00-4p, at *2. The Agency also relies on VEs at step five "to resolve complex vocational issues." Id. When soliciting the VE's opinion regarding whether a claimant's ability to work, the ALJ poses a hypothetical to the VE that must include "all of the claimant's functional limitations, both physical and mental" supported by substantial evidence in the record. Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) (quoting Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995). If the VE's testimony conflicts with the DOT, the ALJ must obtain a reasonable explanation for the conflict. SSR 00-4p, at *2; Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007). Otherwise, "[a] VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." Buck v. Berryhill, 869 F.3d 1040, 1051 (9th Cir. 2017) (quoting Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).

Here, the ALJ appropriately relied on the VE's hearing testimony to find that Plaintiff was capable of performing jobs that exist in substantial numbers in the national economy. The ALJ did so after posing a hypothetical to the VE that contained all of Plaintiff's limitations, supported by substantial evidence in the record. See Bayliss, 427 F.3d at 1218) (citing Magallanes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989) (ALJ's reliance on VE testimony was proper where hypothetical contained all Plaintiff's limitations that were found credible and supported in record). This included the limitation to "occasional brief, superficial, and task-oriented interactions with supervisors."

(AR 76). The VE opined that a person with these limitations can perform the representative jobs of a laundry worker, a ticket marker, and a garment sorter, which exist in substantial numbers in the national economy. (AR 77-78).

Plaintiff has failed to identify any conflict between the VE's testimony and the DOT. Absent such a conflict, the VE's opinion constituted substantial evidence, which the ALJ properly relied upon in the decision to find Plaintiff not disabled. (AR 31-32); see Massachi, 486 F.3d at 1152-54. The ALJ had no obligation to resolve conflicts with other vocational publications or information. See SSR 00-4p, at *2; Shaibi v. Berryhill, 883 F.3d 1102, 1109 (9th Cir. 2017). POMS, in particular, may be "entitled to respect" under Skidmore v. Swift & Co., 323 U.S. 134 (1944), to the extent it provides a persuasive interpretation of an ambiguous regulation, see Christensen v. Harris Cnty., 529 U.S. 576, 587—88 (2000), but it "is not binding either on the ALJ or on a reviewing court." Shaibi, 883 F.3d 1102, 1107 (9th Cir. 2017) (citing Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1073 (9th Cir. 2010)); see also Moore v. Apfel, 216 F.3d 864, 868—69 (9th Cir. 2000) (declining to review allegations of noncompliance with internal agency manual because such a manual "does not carry the force and effect of law.").

Regardless, Plaintiff has also failed to identify any conflict with POMS or other non-DOT sources. Contrary to Plaintiff's argument, the ALJ's RFC finding limiting Plaintiff to

only "occasional, brief, superficial, and task-oriented interactions with supervisors," (AR 23, 76), is not inconsistent with an ability to perform unskilled work. See, e.g., Remer v. Berryhill, 2018 WL 3126104, at *6 (S.D. Cal. June 26, 2018) (rejecting the argument that the RFC limitation to occasional superficial interactions with co-workers and supervisors was inconsistent with an ability to perform unskilled work); Burtenshaw v. Berryhill, 2018 WL 550590, at *7 (C.D. Cal. Jan. 23, 2018) (same); Markell v. Berryhill, 2017 WL 6316825, at *9 (N.D. Cal. Dec. 11, 2017) (same). Furthermore, the ALJ did not find Plaintiff unable to accept instructions and respond appropriately to criticism from supervisors, nor did the record compel such a finding. To the contrary, for example, the ALJ gave great weight to the medical expert, Ashok I. Khushalani, M.D., who reviewed Plaintiff's records and found him capable of performing "simple tasks with occasional public contact," and only mildly limited in his ability to "[i]nteract appropriately with supervisor(s)." (AR 29, 1246, 1250).

Accordingly, the ALJ properly relied on the VE's testimony because the hypotheticals presented to the VE considered all of Plaintiff's limitations that were supported by the record. See Thomas, 278 F.3d at 956 (considering VE testimony reliable if the hypothetical posed includes all of claimant's functional limitations, both physical and mental supported by the record); Bayliss, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony").

11

**B.     The ALJ Did Not Fail to Properly Develop the Record**

In Social Security cases, the ALJ has a special, independent duty to develop the record fully and fairly, and to assure that the claimant's interests are considered. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). The ALJ has a basic duty to inform herself about facts relevant to her decision. Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (Brennan, Jr., concurring). Where a claimant is not represented by counsel before the ALJ, it is "incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003). "The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests." Tonapetyan, 242 F.3d at 1150 (citing Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir. 1992)). In such cases, "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Id. (quoting Smolen, 80 F.3d at 1288). Remand is warranted only if the plaintiff can demonstrate prejudice or unfairness in the administrative proceeding as a result of not having counsel present. Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981).

Plaintiff contends that the VE's testimony that he can perform the jobs of laundry worker, garment sorter, and ticket

marker is "inconsistent with adaptive abilities required to perform those occupations." (Joint Stip. at 13). To demonstrate the alleged inconsistencies, Plaintiff cites the O*NET database and the Occupational Outlook Handbook ("OOH"). (Id. at 14-16). For example, Plaintiff points out that laundry workers are categorized in O*NET under the occupational group of maids and housekeeping, and O*NET indicates that these workers usually need a high school education; work directly for the public 70% of the time; establish and maintain interpersonal relationships 69% of the time; and communicate with supervisors, peers, or subordinates 68% of the time. (Id. at 14 (citing O*NET Online, Reports for 37-2012.00 - Maids and Housekeeping Cleaners, https://www.onetonline.org/link/summary/37-2012.00)). Plaintiff points to similar requirements for the O*NET category that includes ticket takers. (Id. at 15-16 (citing O*NET Online, Reports for 43-5081.02 - Marking Clerks https://www.onetonline.org/link/summary/43-5081.02)). For the garment sorter job, included in the miscellaneous group of "production workers, all other," Plaintiff cites the OOH, which indicates that production worker jobs typically require a high school education and moderate-term on-the-job training, meaning more than one month and up to twelve months of combined on-the-job experience and informal training. (Id. at 14-15 (citing Bureau of Labor Statistics, U.S. Department of Labor, Occupational Outlook Handbook, Data for Occupations Not Covered in Detail, https://www.bls.gov/ooh/about/data-for-occupations-not-covered-in-detail.htm)).

Plaintiff contends that these requirements listed in O*NET and the OOH conflict with his own limitations, and thus the ALJ had a duty to conduct further inquiry and develop the record. (Id. at 17-19). Plaintiff contends that this duty was heightened here due to his mental impairment in addition to his lack of representation. (Id. at 17-18). Plaintiff additionally asserts that he was prejudiced because the ALJ left it unclear whether Plaintiff is actually illiterate, and an inability to read would further preclude the occupations at issue. (Id. at 17, 24-26).

Notwithstanding Plaintiff's contentions, the ALJ satisfied her duty develop the record regarding the education or social/adaptive abilities required to perform the jobs at issue because the VE's testimony did not conflict with the DOT. Plaintiff concedes that the allegedly conflicting requirements are not stated in the DOT. (Id. at 14, 24). The DOT's silence does not create a conflict, nor does it trigger any responsibility to inquire about other vocational sources. Instead, "[a] conflict must exist between the VE's testimony and the DOT in order to trigger the ALJ's responsibility to resolve the conflict." Dewey v. Colvin, 650 F. App'x 512, 514 (9th Cir. 2016) (finding that because the DOT was silent on whether the jobs at issue allowed for a sit/stand option, there is no conflict (citing Quechan Indian Tribe v. U.S. Dep't of Labor, 723 F.2d 733, 735 (9th Cir. 1984)).

The ALJ had no obligation to address the VE's deviation from other sources such as O*NET or OOH. See Shaibi, 883 F.3d at 1109

("[W]e can find no case, regulation, or statute suggesting that an ALJ must sua sponte take administrative notice of economic data in the CBP or the OOH. It is true that an ALJ is required to investigate and resolve any apparent conflict between the VE's testimony and the DOT . . . [b]ut Shaibi cites to no authority suggesting that the same is true for the CBP and OOH."); Gonzalez v. Berryhill, No. CV 17-5402, 2018 WL 456130, at *3 (C.D. Cal. Jan. 17, 2018) ("an ALJ is under no obligation to consult the OOH or to attempt to reconcile conflicts between the OOH and vocational expert testimony") (citing cases). The Ninth Circuit reasoned, in Shaibi, that "unlike the DOT, which is comprised of self-contained descriptions of the requirements for performance of various jobs, using the job distribution information in the CBP and OOH requires information and inferences not contained in the documents themselves and so not amenable to an ALJ's sua sponte consideration." Shaibi, 883 F.3d at 1110 n.6. The Commissioner of Social Security has reached a similar conclusion about O*NET. See Occupational Information Development Advisory Panel ("OIDAP"), Finding Report: A Review of the National Academy of Sciences Report, A Database for a Changing Economy: Review of the Occupational Information Network (O*NET) (June 28, 2010), available at http://ssa.gov/oidap/Documents/; see also Dimmett v. Colvin, 816 F.3d 486, 489 (7th Cir. 2016) (noting that the Agency "hasn't endorsed the O*NET and in fact is developing its own parallel classification system," which is still pending); Beamesderfer v. Berryhill, 2018 WL 2315956, at *7 (C.D. Cal. May 18, 2018) (discussing the OIDAP report).

Because the VE's testimony did not conflict with the DOT, the ALJ appropriately relied on the VE's testimony that Plaintiff, with his limitations, could perform certain representative jobs. see Massachi, 486 F.3d at 1152-54. Plaintiff has not sufficiently shown that the record was inadequate or ambiguous regarding whether Plaintiff had the adaptive abilities needed to perform those jobs. The ALJ therefore satisfied her duty to develop the record. Tonapetyan, 242 F.3d at 1150. Indeed, the ALJ further accounted for Plaintiff's lack of representation and mental impairments by obtaining additional information after the hearing. As noted, she sent interrogatories to a medical expert, and then obtained Plaintiff's response to the medical expert's opinion. (AR 17).

The ALJ also did not err with respect to Plaintiff's ability to read and write. The ALJ noted Plaintiff's allegation that he is illiterate. (AR 31). The ALJ observed, however, that Plaintiff "was apparently able to write letters to the hearing office and complete multiple forms such as the Adult Disability Report, Disability Appeal Reports and Function Reports." (Id. (citing AR 184-95, 223-31, 274, 331, 590-93, 666-72)). The ALJ found "no indication that someone else completed that form." (Id.). In addition, the ALJ noted that Plaintiff "was apparently working for many years in skilled occupations," including as a "taper/drywall finisher" and a painter. (AR 30, 31, 73). Plaintiff contends that the ALJ "never asked if [he] actually wrote the letters" that are in the record. (Joint Stip. at 17). Regardless, even to the extent that the record may be ambiguous

as to whether Plaintiff actually wrote the letters himself, the ALJ reasonably resolved the matter, and substantial evidence supports the ALJ's finding "that while [Plaintiff] may possibly be limited in reading and writing, he is not limited to the degree he alleges and is certainly not illiterate." (AR 31). The ALJ provided this limitation to the VE, stating that Plaintiff has "very, very limited ability to read and write," and "while not completely illiterate, is very close to that." (AR 74). As noted, the VE testified that Plaintiff could perform certain representative jobs with the provided limitations, (AR 77-78), and Plaintiff has not identified any conflict between this testimony and the DOT. The ALJ thus appropriately relied on the VE's testimony to find that Plaintiff was not disabled.

Accordingly, Plaintiff has failed to establish that the ALJ did not adequately develop the record, or otherwise erred in relying on the VE's testimony to conclude that Plaintiff was not disabled. Moreover, Plaintiff has failed to demonstrate any prejudice or unfairness resulting from his lack of representation or mental impairment to warrant remand.

//

//

//

**ORDER**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 14, 2018.

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE